The State v. Levy.

THE STATE v. LEVY *et al.*, *Appellants*.

Division Two, February 12, 1895.

1. **Practice:** COMMISSION TO TAKE DEPOSITIONS: CONTINUANCE: REVIEW ON APPEAL. The refusal of the trial court to issue a commission to take depositions in another state and to continue the cause for a few days for that purpose will not be reviewed on appeal, where such action is not set forth in the motion for new trial.

2. ———: IDENTIFYING DEFENDANT: MISCONDUCT OF PROSECUTING ATTORNEY. The fact that the prosecuting attorney pointed to a defendant, in order to enable a witness to identify him, will not constitute reversible error, where other witnesses had identified defendant before and after such action of the prosecuting officer.

3. ———: ———: ———: REVIEW ON APPEAL. Alleged misconduct of the prosecuting attorney, in pointing to a defendant to enable a witness to identify him, will not be reviewed on appeal, where it is not shown by the bill of exceptions to have occurred.

4. ———: ———: ———: ———. The mere statement in the bill of exceptions that "defendant objects to the question and answer for the reason that witness was not able to point out the defendant" until the prosecuting attorney "indicated where he sat," is no more evidence of such action of the prosecuting attorney, than if only inserted in the motion for new trial, and the appellate court will not, under such circumstances, pass upon the question of the attorney's misconduct.

5. ———: BILL OF EXCEPTIONS: AFFIDAVITS. Affidavits contained in the bill of exceptions are inadmissible to establish what occurred during the trial.

6. ———: IMPROPER REMARKS OF COUNSEL: MOTION FOR NEW TRIAL. Alleged improper remarks of counsel in argument, will not be reviewed on appeal, where they are not made a ground of the motion for new trial.

7. **Criminal Law:** PRACTICE: QUESTION FOR JURY. Where the evidence is conflicting on the trial of a criminal cause, the question of the guilt of the accused is for the consideration and determination of the triers of the facts.

8. ———: ROBBERY: FRAUD. It is no defense to a prosecution for rob-
bery that defendants intended to accomplish their purpose by fraud,
but, failing in that, secured the property against the will of the owner
and by putting him in fear of some immediate injury to his person.

9. **Excessive Verdict.** The punishment of twenty-five years' impris-
onment in the penitentiary in this case, *held* not to be excessive,
where the defendants robbed a person of $3,500 and there is much
reason to believe that they are habitual criminals.

*Appeal from Clinton Circuit Court.*—HON. WM. S.
HERNDON, Judge.

AFFIRMED.

The defendants were indicted, tried and convicted
at the May term, 1894, of the Clinton circuit court of
the crime of robbery in the first degree, and sentenced
to imprisonment in the penitentiary for the term of
twenty-five years each.

This robbery is alleged to have occurred on the
the twenty-sixth day of June, 1891. Four counts in
the indictment charge the crime of robbery, while the
fifth and sixth counts charge that Trice was swindled
by means of a confidence game known as *three-card
monte.* Before going to trial, defendants applied for a
continuance, but this was denied them. Being sen-
tenced in accordance with the verdict, they appealed to
this court.

The evidence in the cause is substantially this:
During the month of June, 1891, the prosecuting wit-
ness, Stephen H. Trice, was a farmer in excellent
financial circumstances, residing between Plattsburg
and Lathrop, in Clinton county, Missouri. On the
twenty-fifth day of June, 1891, he was engaged, with
the help of some hands, hoeing corn near his residence
on the farm, when a carriage being drawn by two
black horses, drove up the road; two nicely dressed
and apparently polished gentlemen were the occupants;

one came across the field to where Mr. Trice was at work, and introduced himself as Dr. Sparks, of St. Louis. After the introduction to Trice, they walked out to the carriage, which was then standing in front of the gate, about one hundred and fifty yards away, where Dr. Sparks introduced Mr. Trice to the other party, who he said was Judge Hays, of St. Louis.

Dr. Sparks, so called, is identified as defendant Haight, Judge Hays as Tom Jackson. Jackson was convicted in the Clark circuit court and served a portion of his term in the penitentary, while Haight and Levy, on pleas of guilty in the Clark circuit court, served a portion of their sentence in the penitentiary, their crimes having been the obtaining of money under false pretenses.

Jackson and Haight represented to old man Trice that they were there for the purpose of investing a large amount of money in real estate; that Jackson was the brother of a lady then at the hotel in Plattsburg, whose husband had died, leaving a large amount of money which, under the terms of the will, was to be invested in real estate for the use and benefit of the widow and minor children. After discussing the value of Trice's farm and the probabilities of his (Trice) being able to purchase some adjoining land for them, they announced that they would return to Plattsburg, and return in the morning and bring with them the sister.

On the following morning about 9 o'clock they returned in the same conveyance and proceeded to look over the land. Trice informed them that he would sell under no circumstances without first conferring with his father-in-law, Joseph Biggerstaff, who resided at Plattsburg. This seemed to be satisfactory, and they arranged to return to town, and took old man Trice with them, with instructions to him to secure $3,500 in

currency, that he might be able to buy the additional and adjoining land. They explained that the sister was not with them that morning, for the reason that she was sick at the hotel. About half way between the Trice farm and Plattsburg Jackson got out of the buggy, saying it was unnecessary for him to go back down town; that he would get out there and take a bath and await their return.

Haight proceeded with Trice in the carriage to Plattsburg, cautioning him not to say a word to anybody about the transaction, for, if they didn't purchase his land, they wanted to purchase a tract southeast of Cameron, and didn't want anybody to know anything about it. When they got into Plattsburg, Haight suggested that they had better not be seen together, and for Trice to get out and walk down to Biggerstaff's, which he did, and to be in a hurry, for they wanted to return to St. Louis that evening.

Trice went to see Mr. Biggerstaff, then to the bank, where he drew $3,500 in greenbacks—seven packages of $500 each—which the banker, Trimble, delivered to him in a package wrapped in paper and tied with a string. Trice proceeded down the street from the bank to where he met Haight, got into the carriage and proceeded on the return trip. On the way back, Haight gave Trice $1,000 in greenbacks, as he said, to show him they were in earnest, which Trice put in the package with the $3,500. When they got to a point near where they had left Jackson the carriage was stopped, and Jackson came up and said: "Doc, I have found a nat; he wants a game; I told him I was not a gaming man, * * * but I told him may be you would."

Haight was sitting on the front seat of the carriage and Trice on the rear seat. Jackson climbed into the seat with Trice, placed his left hand in the lap of Trice, and his right around his shoulder. Levy, the other

defendant, at the same time made his appearance, while along the side of the road two other men with masks or dummies were standing. Levy and Haight proceeded to throw three-card monte, and Levy won some money from Haight.

Trice was sitting there with the $4,500 in greenbacks in his hands, when Haight reached into his pocket, pulled out a bunch of money and threw it down, and Levy went into a carpet-sack he was carrying, took out a bunch and threw it down; Levy won again; in the meantime Trice had become alarmed and insisted that they drive on or let him out, which they refused to do. Levy then asked Trice where his money was and Trice answered: "I have no money to indulge in that way; I know nothing on earth about gambling," but they said, "You can learn." Trice said he was pretty old to learn, he knew nothing about cards; did not know one from another and had never made a bet in his life on anything.

Levy threw the cards and said: "Turn that card," and Trice said: "I won't turn the card. I don't propose to have anything to do with it," when Jackson struck Trice and said: "Trice, you will have to turn that card." Levy said: "Trice, you will have to turn that card." Levy ran his hand into his pocket, drew his revolver, and said: "Turn that card, turn it damned quick, or I will turn you." Trice then turned the card and Levy reached over and took his money.

There was no money put up, and Trice had possession of the money until after he was compelled by Levy, under cover of the revolver, to turn the card; they drove on a little farther, where they put Trice out of the buggy, ordered him to go home, and warned him not to leave there that night, not to say anything about it, and led Trice to believe, as he swears, that he would be killed if he did. They then drove to Cameron

as hard as they could go, delivered the team to a liveryman, and made their escape, and were not apprehended nor arrested on this charge until they were discharged from the penitentiary under the other indictment.

Many witnesses from Plattsburg, along the road from Plattsburg to Trice's home, from Trice's home to Cameron and at Cameron, identified the defendants. The liveryman at Cameron testified that when Haight drove the team into the stable the horses were very hot indeed, having evidently been driven hard, and that Haight gave him a quarter to pay the boy for giving them special attention.

*Charles T. Noland* and *F. B. Ellis* for appellants.

(1) The court should have issued the special commission to take the depositions of those witnesses whose depositions had just been suppressed, and named such terms and conditions as were suggested by attorneys for appellants. While the issuing of such commissions lies within the discretion of the court, yet, the supreme court will reverse the judgment where such discretion is abused. (2) The misconduct of the prosecuting attorney in pointing his pencil at the prisoner, George Haight, when he saw a state's witness was about to identify another man for him, and his remarks in his closing speech by contemptuously calling him a Jew, shows too much zeal and is wholly wrong. (3) This court having solemnly and unanimously determined that the facts as testified to by Stephen Trice at Kahoka, in the case of *State v. Jackson,* 112 Mo. 585, constituted a violation of section 3826, Revised Statutes, 1889, and not robbery—that question is *res adjudicata* in this case, unless Stephen Trice testified to additional and different facts which are of a nature to

cause the court to .render a different decision, which is not the case. (4) The verdict is against the evidence. It is seldom this court decided that a case must be reversed on this ground. But the rule laid down is that, when, after reading a record, the court feels that the verdict must have been the result of passion, prejudice or some corrupt and unworthy motive, then a new trial will be ordered.

*R. F. Walker*, Attorney General, and *Morton Jourdan*, Assistant Attorney General, for the state.

(1) The indictment in this case is sufficient. It clearly charges the offense of which the defendants have been tried and are convicted, and follows the language of the statute under which it is drawn. R. S. 1889, sec. 3530. (2) It will not be contended that the court committed reversible error in not reprimanding the prosecuting attorney, for referring in his closing argument, to the defendant as a "Jew." The jury would have been warranted in indulging the presumption from the name the defendant bore that he was a Jew, and also from their observation of him. Besides, it was no reflection that he was a "Jew." Defendant contends that the judgment should be reversed for the misconduct of the prosecuting attorney while the witness Stonum was on the stand. When he asked the witness if he identified Haight, it is. said he turned and pointed with his lead pencil to defendant Haight. How the defendant could have been prejudiced we are unable to conceive. Other witnesses, both before and after Stonum, had positively identified Haight. The record shows that the witness was asked which one of them had secured the team, and he answered, "The one they called Doc always." (4) The instructions in this case, with exceeding liberality to the defendant,

correctly declare the law.  They cover the entire case
and present every issue made by the indictment and
the testimony.  (5) Defendant complains of the admis-
sion of testimony offered upon the part of the state and
of the exclusion of testimony offered in their behalf
over and against their objection and exceptions.  The
record, however, fails to show either the admission
or exclusion of testimony over the objection of the
defendants, to which they saved exceptions.  (6.) The
defendants also allege the discovery of new evidence
since the trial, but, inasmuch as the new evidence is
not shown by the record, the affidavit of the witness is
not produced, the subject-matter of the evidence not
given, and the motion for new trial not verified, this
contention will not avail.  *State v. Welsor*, 117 Mo.
570.  (7) The record nowhere shows that the testi-
mony of Trice, the prosecuting witness, given in the
prosecution of Jackson in the Clark county circuit
court was read to the jury, or that it was admitted or
excluded.  The presumption will not be indulged that
this testimony was read, when the record simply shows
that it was offered.  *State v. Dawson*, 124 Mo. 418.
Therefore, the question of the defendant's guilt of the
crime of robbery must be determined from the testi-
mony actually given the jury in this case and upon
this trial, which shows a plain case of robbery in the
first degree.  In this case the trial judge heard the testi-
mony, saw the witnesses, noted their conduct, learned
their interests, their prejudice and feeling, and was of
the opinion that the state's testimony had established
the guilt of defendants as to robbery sufficiently to
authorize him in permitting the jury to pass upon the
question of defendant's guilt or innocence, under the
instructions given them.  This he did, and the judg-
ment ought not to be reversed upon that ground.

VOL. 126—36

*State v. Fisher*, 124 Mo. 460; *State v. Alfrey*, 124 Mo. 393; *State v. Sanford*, 124 Mo. 484; *State v. Williams*, 26 S. W. Rep. (Mo.) 340; *State v. Young*, 119 Mo. 495; *State v. Richardson*, 117 Mo. 526; *State v. Hermann*, 117 Mo. 620; *State v. Burd*, 115 Mo. 405; *State v. Banks*, 118 Mo. 117; *State v. Moxley*, 115 Mo. 644; *State v. Schaeffer*, 116 Mo. 96; *State v. Cantlin*, 118 Mo. 100; *State v. Jackson*, 106 Mo. 181; *State v. Orrick*, 106 Mo. 111; *State v. Howell*, 100 Mo. 628; *State v. Lowe*, 93 Mo. 547; *State v. Hicks*, 92 Mo. 432; *State v. Gann*, 72 Mo. 374; *State v. Musick*, 71 Mo. 401; *State v. Hammond*, 77 Mo. 158. Where an inference of guilt can be reasonably drawn from the evidence, a verdict will not be set aside on appeal.

SHERWOOD, J.—Various errors are assigned as grounds for reversing the judgment rendered.

I. The refusal of the trial court to issue a commission to take depositions in the state of Illinois, and to continue the cause for a few days for that purpose, can not be noticed because not set forth in the motion for a new trial.

II. Relative to the alleged improper conduct of the prosecuting attorney in pointing with his pencil to defendant Haight, there are three answers:

*First.* That other witnesses had identified Haight, before and after the witness Stonum's attention was said to be thus directed to Haight by the pencil-pointing. *Second.* The supposed fact above mentioned is not shown by the bill of exceptions to have occurred. The mere statement in the bill of exceptions that "defendant objects to the question and answer for the reason that witness was not able to point out the defendant Haight, until Mr. Cross indicated where he sat with his pencil," is no more evidence of the existence of such a fact than if it had been inserted in the motion for a new

trial. *Third.* The affidavits contained in the bill of exceptions in reference to the conduct of the prosecuting attorney as aforesaid, are inadmissible to establish what occurred during the trial, as this court has so often decided. *State v. Hayes,* 81 Mo. 574; *State v. Musick,* 101 Mo. 260; *State v. Blunt,* 110 Mo. 322; *State v. Duncan,* 116 Mo. *loc. cit.* 308, and other cases.

III. In regard to the remark made by the prosecuting attorney that the defendant Isaac Levy, alias "Jewey *Mike,*" was a "*Jew,*" to which said defendant excepted, it is sufficient to observe that the point is not preserved in the motion for a new trial; because, although that motion charges the prosecuting attorney with misconduct during the trial, yet the point mentioned is not specified, but, on the contrary, when the motion mentions misconduct, it refers to the affidavits; but they only refer to the conduct of the attorney in pointing with his pencil, and to nothing else; so that the point in question was not saved.

IV. There is no complaint made of the instructions, and if there were, it would be without foundation, since they state the law fairly and in a manner very favorable to the defendant.

V. The testimony shows a very clear case of robbery, and, though there was some testimony countervailing that on the part of the state, yet this was a question solely for the consideration and determination of the triers of the facts.

It is insisted, however, that, in the case of *State v. Jackson,* 112 Mo. 585, this court decided that the crime of which Trice was the victim, was one under section 3826, Revised Statutes, 1889, and not robbery. But on turning to that case it will at once be seen that the facts therein were not so fully developed as in the case at bar. Here, no doubt, false pretenses were used as matter of inducement to get Trice to draw his money

from the bank, but, this having been done, what began in fraud ended in robbery, and was evidently intended to end in that way, if the fraud scheme failed.

VI.   Finally, the claim is made that the punishment is excessive, and indicates prejudice, passion, etc., but we do not see any such indications in the record. There is much reason to believe that the defendants are *habitual criminals*, whose prey is mankind; if so, the jury very properly granted them what is tantamount to a life estate in the penitentiary.   Therefore, judgment affirmed.   All concur.