THE STATE v. MILLER, Appellant.

Division Two, December 18, 1900.

1. **Receiving Stolen Property:** RECENT POSSESSION: PRESUMPTION OF GUILT. The evidence showed that the property was stolen by another prior to its reception by defendant; that it was found in defendant's possession shortly thereafter, and that he was attempting to dispose of it with an intention to secrete it. *Held,* that the proof of such facts raised a presumption of guilt on the part of defendant, that he received the property with the knowledge that it was stolen, and the jury were warranted in so finding, in the absence of any satisfactory explanation as to how he acquired possession of the property.

2. ———: INSTRUCTION: INCORRECT DEFINITION: HARMLESS ERROR. An instruction which defined "feloniously" as meaning "wickedly and against the admonition of the law," criticised as incorrectly defining the term, but since no such instruction was necessary, and the defendant was not injured thereby, error *held,* harmless.

Appeal from St. Louis City Circuit Court.—*Hon. D. D. Fisher,* Judge.

AFFIRMED.

*Bishop & Rollins* for appellant.

(1) There was no evidence that the appellant secreted the property.    Secrete, according to Webster, means to hide or conceal, and there was no evidence that appellant hid

Vol 159 mo—8

or concealed the property, unless by a stretch of meaning, sending property by express, with an open statement from whom it was sent, is a concealing; and the jury might well have construed the language of the instruction to mean that the conduct of appellant was a secreting, and a circumstance which, connected with possession, sustained the indictment. (2) There is, as a general rule, no crime without criminal intent. And the offense of receiving stolen goods consists, not merely in knowing that the goods were stolen, but also in receiving with unlawful or felonious intent. 2 Bish. New Crim. Law, sec. 1138; 1 Wharton, Crim. Law (10 Ed.), sec. 988; Arcia v. State, 26 Texas App. 205.

*Edward C. Crow*, Attorney-General, and *Sam B. Jeffries*, Assistant Attorney-General, for the State.

No doubt could arise as to defendant's having received the property; she testified herself that she received it; the question is as to whether she had knowledge of its having been stolen. This being an issue, evidence of other stolen property having been found in her possession was properly admitted for the purpose of proving the guilty knowledge. State v. Meyers, 82 Mo. 564; State v. Moore, 101 Mo. 316.

BURGESS, J.—At the November term, 1899, of the circuit court of the city of St. Louis, the defendant was convicted, under an indictment theretofore preferred by the grand jury of said city against her, and her punishment fixed at four years' imprisonment in the penitentiary for receiving one gold watch, one gold watch chain, and one gold watch charm, of the alleged aggregate value of one hundred dollars, the property of one William S. Gannon, knowing that the same had been stolen from him.

After unsuccessful motions for a new trial and in arrest, defendant prosecutes this appeal.

On the night of the 29th of April, 1899, the dwelling house of said Gannon, in said city, was entered by thieves, and his gold watch, gold watch chain, and one gold watch charm, of the value of one hundred dollars, and between six and seven dollars in money, and a lady's small purse taken and carried away. The house was entered through a kitchen window which had been left open at the bottom, by pushing up the sash high enough for a grown person to enter through it. Directly across the street from the residence of Gannon, there lived one Philip Jamison and his family. On the same night his house was entered by a front window and his pocket book and gold watch, the watch, a lady's watch, stolen.

On the Monday evening following these burglaries, there was deposited in a branch office of the Adams' Express Company at the drug store of one Henry A. Kattelman, a package of small size, addressed to Mr. B. Meyer, 305 South Lincoln street, Chicago, Ill.; on the side of this package were the words, "From Mrs. E. Miller, North Eighteenth street, St. Louis, Missouri." This was the name and residence of the defendant, and this place where she resided was less than two blocks distant from this drug store where the package was deposited.

It seems to have been suspected that this package contained stolen property, and the manager of the express company called in two police officers, and the package was opened and found to contain a gold watch, chain and charm, and another gold watch case, this latter one, however, being broken into fragments. These articles were identified by the owners as the ones which had been stolen in the manner before described. The Gannon watch was easily identified by his name which was engraved upon it and by the number of

the watch. The fragments of the other watch were identified as the Philip Jamison watch by the words "Pleasanton, Kansas, 1883," engraved on the inside thereof, and by the initials of the owner which were on the outside. When the defendant was arrested, she at first denied any knowledge of these articles, and said to the police officers then present at her house, "If you think I have got anything here that you are looking for go ahead and search the house, you have got my permission." The officers then searched her house, but found no stolen property. The property in question, however, had been sent two days before to the express office, but after having learned that the officers were in possession of evidence showing that she had had possession of the articles, she said her son-in-law, B. Meyer, who was a dealer in old gold and silver in Chicago, had left them at her house and that she had sent them to him by express. One of the officers told her that Meyer would be brought from Chicago so as to tell whether her story was true or not, whereupon she said she had bought the articles from a negro on Olive street. Later she said she bought them at her home on Eighteenth street.

There was evidence that the Gannon watch was of the value of about fifty dollars, and the chain about twenty; there was some evidence on the part of the defense tending to show that the value was less than thirty dollars.

The defendant testified in her own behalf and said her name was Liberman, but it had been Esther Miller, and that she was still known by the latter name; she said she had at times been engaged in the business of buying and selling old gold and silver, and had distributed in various places cards, on which were printed these words: "E. Liberman pays highest price for old gold and silver, 1025 North Eighteenth street, St. Louis, Mo."

She also testified that on the 29th day of April, Mrs. German, who occupied the lower story of the building, of which she occupied the upper, brought up to her apartments a nicely dressed colored man, who had one of her business cards, and told her he had a watch and chain for sale, he being, as he said, "hard up" for money. That she looked at the watch, saw the name on it, and asked the man whose name it was; and he replied that it was his own name. He asked $35 for the watch, she offered him $30, and they finally agreed on $31.50, and the sale was made. The man then produced some broken fragments of another watch, which he said belonged to his wife, and the defendant bought that also for old gold. Defendant said she did not notice the inscription "Pleasanton, Kansas, 1883," nor the initials on the broken watch. She asked the man how he came by her card and he said some one gave it to him. She bought the articles with the idea that she could sell them for old gold at a profit of about five dollars.

On the next Monday evening she packed the articles and sent them by her son to the nearest branch office of an express company, which was at the drug store of Henry A. Kattelman. By her direction her son addressed the package to B. Meyer, Chicago, Ill. Meyer was her son-in-law, and was a jobber in old gold and silver. She also directed her son to write her address on the package, and this he did.

Annie German, on behalf of the defendant, testified that she lived in the same house at 1025 North Eighteenth street, with the defendant, she occupying the lower, and the defendant the upper story; that on the Saturday morning prior to the defendant's arrest, a colored man rang her door bell and asked for Mrs. Liberman. The witness said she took the man up to the defendant's apartments, and remained during the conversation between defendant and the colored man.

Her testimony was corroborative of defendant's as to the facts and circumstances of the purchase of the articles from the negro by the defendant, and as to the conversation which defendant had testified to.

Several witnesses testified that the reputation of the defendant for honesty was good.

The court gave eleven instructions but only the third, fourth, ninth and tenth are criticised. They read as follows:

"3.    The word 'felonious' as used in these instructions, means wicked and against the admonition of the law, and the word 'feloniously,' as used in these instructions, means wickedly and against the admonition of the law.

"4.    The jury are further instructed that if they find and believe from the evidence, that the watch, chain and charm in question were feloniously stolen from the said prosecuting witness, Gannon, as stated in the foregoing instructions and recently afterwards were found in the exclusive possession of the defendant, and that the defendant secreted the same, such possession and secretion of said property would be presumptive evidence that the defendant received said property so stolen, knowing at the time that the same had been so stolen, and if such presumption is not satisfactorily rebutted by other facts and circumstances in evidence, such presumption would warrant a verdict of guilty of having knowingly received said property with knowledge that the same had been so stolen, and such recent possession and secretion of said property so stolen when taken in connection with other facts tending to establish guilt would warrant the jury in finding the defendant guilty of receiving said property, knowing that the same had been so stolen. The presumption of guilt arising from the mere naked fact of possession and secretion of stolen goods, when not corroborated

State v. Miller.

or strengthened by other evidence as to the commission of the offense would be rebutted by the fact of defendant's good character, if the jury believe from the evidence that she has sustained a good character, or by her satisfactorily accounting for such possession, but it is for the jury to say after taking into consideration all the evidence in the case; that in relation to the possession of the goods by the defendant; that in relation to her character by statements or admissions made by the defendant in regard to the offense, if any, together with all the facts and circumstances in proof, whether the defendant is guilty or not. If the jury believe from all the facts, evidence and circumstances in proof that the defendant is guilty, they should find her guilty, otherwise they should not find her guilty.

"9. The defendant is a competent witness in her own behalf, but the fact that she is a witness testifying in her own behalf, and the interest she has at stake in this case, may be considered by the jury in determining the credibility of her testimony.

"10. The jury are instructed that they are the sole judges of the credibility of the witnesses and of the weight to be given to their testimony. In determining such credibility and weight they will take into consideration the character of the witness, his or her manner on the stand, his or her interest, if any, in the result of the trial, his or her relation to or feeling towards the defendant or prosecuting witness, the probability or improbability of his or her statements, as well as the facts and circumstances given in evidence. In this connection you are further instructed that if you believe that any witness has knowingly sworn falsely to any material fact, you are at liberty to reject all or any portion of such witness's testimony."

With respect to the third instruction it is claimed that the definition of the word feloniously as therein defined is a

mere circumlocution, signifying nothing, and in nowise calculated to enlighten a jury, and therefore erroneous.    While
feloniously is, we think, inaccurately defined by the instruction, a similar definition in an instruction in State v. Parker,
106 Mo. 217, was held to be unobjectionable.    But no such
instruction was necessary (State v. Cantlin, 118 Mo. 100)
and in any event harmless.

It is insisted that the fourth instruction was erroneous
because there was no evidence that defendant secreted the
property.    This depends altogether upon the facts connected
with the transaction, and the motive which defendant had in
placing the property in a box, then depositing it in the express office to be forwarded to Chicago.    Similar transactions
doubtlessly occur many times every day in the city of St.
Louis, and of themselves are no evidence of the secretion of
the property.    But it is also true that stolen property is
frequently disposed of the same way in order to get it out of
the possession of the guilty party, and away from the scene
of the theft.    That the property in question was stolen is
not controverted, and when first asked about it by the police
officers, defendant denied knowing anything about it, then
after becoming aware that the officers knew that she had been
in possession of it, she made different and inconsistent statements as to how she came into its possession, and finally said:
"Well I might as well tell the truth about it."    These facts
did not comport very well with an honest possession of the
property, nor with a purpose on defendant's part to dispose
of it openly as if honestly obtained, but tended to show that
she was trying to get it out of her possession, in a way that
it could not be traced or found, in other words an intention
to secrete it, and we think justified the instruction.

It is also argued that the instruction is faulty in that it
says, "such recent possession and secretion of the property so

stolen, when taken in connection with other facts tending to establish guilt, would warrant the jury in finding the defendant guilty," thereby leaving the jury to draw their own legal conclusions as to what was intended to establish guilt, and singling out certain features of the evidence to define the offense, and leaving the jury to determine both as to the law and fact, what was or was not necessary to warrant a verdict. While the instruction is subject to verbal criticism, when taken altogether, and in connection with the other instructions in the case, we do not think that the jury could have been misled, or the defendant prejudiced thereby. There was abundant evidence that the property was stolen by another prior to its reception by defendant, and having been found in her possession recently thereafter, raised the presumption of guilt on her part, that she received it with the knowledge that it was stolen, if she failed to satisfactorily explain how she acquired possession. [State v. Guild, 149 Mo. 370.]

It is claimed that the ninth instruction should not have been given, especially in connection with the tenth. Similar instructions have been so often approved by this court, that it would be a useless expenditure of time to enter into a discussion of them, and we must decline to do so.

Finding no reversible error in the record, we affirm the judgment. *Gantt, P. J.*, and *Sherwood, J.*, concur.