**STATE of Missouri, Respondent,**

v.

**Richard Adolph SCHUSTER, Appellant.**

**No. 44434.**

Supreme Court of Missouri.

Division No. 1.

Oct. 10, 1955.

W. H. S. O'Brien, Festus, for appellant (defendant).

John M. Dalton, Atty. Gen., Paul McGhee, Asst. Atty. Gen., for respondent.

VAN OSDOL, Commissioner.

Defendant was convicted of the crime of forcible rape. Section 559.260, RSMo 1949, V.A.M.S. His punishment was assessed by a jury at two years in the penitentiary; and he has appealed from the judgment entered.

Herein defendant-appellant contends the trial court erred in overruling defendant's motion for a judgment of acquittal; in giving State's Instruction No. 3; and in failing to properly rule on defendant's objection to a statement made by the prosecuting attorney in his argument to the jury. Defendant-appellant also asserts the prosecuting attorney, when prosecutrix was testifying, assisted her in identifying defendant and that this conduct was prejudicial in that the ability of the prosecutrix to identify defendant as one of her assailants was seriously questioned and, because of the prosecuting attorney's conduct, even now remains in doubt.

The State introduced evidence tending to prove that prosecutrix, sixteen years old, married but estranged from her hus-

band, was sitting with one Kirkland in an automobile parked on a street in St. Louis at about eleven o'clock in the evening of October 20, 1953. Another automobile came up behind the Kirkland car and stopped. Five men got out of the other car and, coming up beside the Kirkland car, demanded that prosecutrix and Kirkland get out "and do as we say and you won't get hurt." Defendant said to prosecutrix, "Come on and get out of the car or I will cut your damn throat." One of the men, Ellington, drew a pistol, and another (defendant) had a knife. They overpowered Kirkland; forced prosecutrix into the other automobile; deflated a rear tire of the Kirkland car; and then drove away taking prosecutrix with them. They made her crouch or sit or lie down on the floor board between the front and rear seats and partially concealed her with a "television." Ellington, sitting on the left in the rear seat, "was sitting over" her. Defendant sat on the right of the rear seat, and the other three men were in front. The car was driven to a service station for gasoline, but prosecutrix testified she made no outcry there, because she was in fear—"I couldn't raise up—and he (Ellington) had this gun." The car was then driven out Gravois to Highway No. 21 and on across the Meramec River, thence down a rocky road to a point at or near a "club house" or "cabin with stilts" in Jefferson County. There the six got out of the car and entered the cabin through a window, Ellington the while holding prosecutrix by the arm and demanding that she "keep walking." Defendant was behind her. Ellington took prosecutrix into a bedroom, removed her clothes, pushed her down on a bed and had sexual intercourse with her against her will. Ellington then said, "Don't you get up, you wait a minute. I will be right back." Ellington went into another room and defendant then came in, pushed prosecutrix down and had intercourse with her without her consent. The entire party of six were in the cabin until nearly dawn. Returning to St. Louis, prosecutrix was put out of the car on a street about seven blocks from her home. She caught a cab and went home arriving

about five o'clock in the morning of October 21st. "Not too long, not over five minutes" later she told her mother and brothers "all about it," and also talked to a policeman about "what all happened."

When defendant's counsel was cross-examining prosecutrix he confronted her with her testimony at the preliminary hearing to the effect that one Speraneo, one of the five who abducted prosecutrix, had committed the second assault upon her. And it seems that at one time during her testimony at the preliminary hearing prosecutrix said that she had made no objection; that she was not sure who was her second assailant—"I couldn't exactly see his face in the pitch dark—he (her second assailant) is slimmer than this first guy"; and that she had formerly said that defendant was drunk and she was not sure he consummated the sexual act. However, she explained she later identified defendant as the one who committed the second assault because she knew her second assailant was drunk, as was defendant, and had missing teeth, as has defendant.

Defendant-appellant herein urges there was no substantial evidence that the alleged act of intercourse was against the will of prosecutrix. And it is said prosecutrix' entire story as related at the trial and as related at the preliminary hearing "all creates an irreconcilable conflict resulting in nothing but confusion."

In the case of State v. Burton, 355 Mo. 467, 196 S.W.2d 621, cited by defendant-appellant, the testimony of the prosecutrix at the trial disclosed conduct on her part, before and after the time of the alleged assaults, inconsistent with that of one who was about to be or had been forcibly ravished. Prosecutrix in that case had three opportunities to safely leave the automobile in which she was assertedly assaulted, one opportunity being after one of her alleged assailants told her that the five were going to have sexual intercourse with her. Upon her return home it was some fourteen hours before she made complaint to her mother.

In our case, it was reasonable to infer that prosecutrix did not have an opportunity to escape her armed abductors; and that outcries and physical resistance to the utmost were inhibited and her submission brought about through fear. " 'A consent induced by fear of personal violence is no consent; and, though a man lay no hands on a woman, yet if by an array of physical force he so overpowers her mind that she dares not resist, he is guilty of rape by having the unlawful intercourse.' Bishop, Criminal Law, 7th Ed., Sec. 1125." State v. Moore, Mo. Sup., 143 S.W.2d 288, 289. See also State v. Catron, 317 Mo. 894, 296 S.W. 141; State v. Barbour, 234 Mo. 526, 137 S.W. 874; State v. Cunningham, 100 Mo. 382, 12 S.W. 376.

There were no inconsistent statements of the prosecutrix-witness during the trial which would destroy the probative effect of her testimony; nor was her testimony incredible or inherently improbable so as to call for a showing of corroborative circumstances. However, in this connection, the evidence tends to show that prosecutrix, at the first opportunity, complained of the alleged assaults upon her. There was no impeachment by prior inconsistent statements or otherwise as would, as a matter of law, make her testimony unworthy of belief. The prior inconsistent statements of prosecutrix in this case were matters for the jury, whose province it was to determine the credibility of the witnesses and the weight and value of their testimony. State v. Spinks, 344 Mo. 105, 125 S.W.2d 60. We are of the opinion the evidence adduced by the State in the instant case was substantial in supporting defendant's conviction.

Instruction No. 3, given by the trial court at the instance of the State, was as follows,

"You are further instructed that the word 'Feloniously' as used in these instructions means wrongfully and wickedly, and against the admonition of the law, and also refers to the punishment imposed by law."

The word "feloniously" was not used elsewhere in the instructions, and it is defendant-appellant's contention that the only effect which the instruction could have had upon a jury of laymen was to inflame the jurors' minds "with the harsh language and emphasize it." Regardless of whether or not the instruction correctly defines the word "feloniously," and although it was unnecessary to define the word, in this case, we are unable to see that the error, if any, or inadvertence in giving the instruction was other than harmless. State v. Miller, 159 Mo. 113, 60 S.W. 67. The jury surely must have ignored or disregarded Instruction No. 3 upon being unable to find the word "feloniously" in any other instruction.

In the opening argument to the jury, State's counsel was apparently urging that prosecutrix no doubt was in fear during the entire progress of the night's occurrences. State's counsel made reference to the evidence that the man Ellington had a pistol and defendant had a knife; counsel then said, "What would you have done if it had been placed on you and somebody down there with a knife at your throat * * *?" Upon objection, the trial court admonished, "Don't ask the jury what they would have done." Counsel for the State then said, "Do you know what these punks would have done?" Defendant's counsel objected "to the inflammatory nature of the argument." The trial court ruled, "Let's stay within the record. Don't call names, Mr. Saunders. Go ahead." Defendant complains of the use by State's counsel of the word "punks" in speaking of the five men, including defendant, who allegedly abducted prosecutrix. It will be seen that the trial court, in effect, sustained defendant's objection to the use of the language quoted, and admonished State's counsel not to call names. Defendant's counsel requested no other action on the part of the trial court. We believe the word "punks" was not so inflammatory and prejudicial as to require a new trial, particularly in view of the trial court's rulings at the time and in the exercise of its discretion in overruling de-

fendant's motion for a new trial. State v. Sanchez, Mo.Sup., 269 S.W.2d 46.

 Attending now defendant's assignment that the prosecuting attorney, when the prosecutrix was testifying, aided her in identifying defendant.

We have noted that the prosecutrix was asked to point out "that man," if any man in the courtroom was one of the five who came to the Kirkland car the evening of October 20th. Defendant's counsel objected to the prosecuting attorney's reference to "that man" for the stated reason that the witness "has not said whether it was one or more." The trial court directed the prosecuting attorney, Mr. Saunders, to make his question more definite. The prosecutrix was then asked, "Can you identify this man sitting behind Mr. O'-Brien?" Mr. O'Brien objected and moved for the discharge of the jury "because Mr. Saunders leaned back and pointed to one of the men seated in the courtroom." The trial court did not rule on the objection, but the judge remarked, "I believe this charge is against one Richard Adolph Schuster, is it not?" Whereupon the prosecuting attorney asked prosecutrix the further question, "Can you identify Richard Adolph Schuster?" The witness then identified the man sitting behind Mr. O'-Brien as Richard Adolph Schuster, and said he was one of the five who came to the Kirkland car the evening of October 20th.

No record was made of the fact, if so, that the prosecuting attorney pointed to one of the men in the courtroom. The assertion of such fact is contained only in counsel's objection. Compare State v. Levy, 126 Mo. 554, 29 S.W. 703. However, we shall assume the prosecuting attorney pointed to defendant when he asked, "Can you identify this man sitting behind Mr. O'Brien?" We can see no erroneous action of the trial court in ruling or in failing to rule in this situation. The question was not answered. The fact that the prosecuting attorney, when he asked the question, "pointed" to defendant, who we infer was seated behind Mr. O'Brien,

was of no more effect in identifying defendant than the language contained in the question.

We consider the information sufficient, and the verdict responsive. Allocution was afforded, and judgment and sentence duly entered and pronounced.

We are of the opinion the judgment should be affirmed.

It is so ordered.

COIL and HOLMAN, CC., concur.

PER CURIAM.

The foregoing opinion by VAN OSDOL, C., is adopted as the opinion of the court.

All of the Judges concur.