STATE v. WILSON BATTLES, Appellant.—No. 40723.—212 S. W. (2d) 753.

Division Two, July 12, 1948.

*Morris A. Shenker* and *Bernard J. Mellman* for appellant.

1224

*J. E. Taylor,* Attorney General, and *Samuel M. Watson,* Assistant Attorney General, for respondent.

[755] TIPTON, P. J.—The appellant was convicted in the circuit court of the city of St. Louis, Missouri, of murder in the second degree and his punishment was assessed at imprisonment in the state penitentiary for a term of 15 years. He has duly appealed to this court.

Appellant contends that the trial court erred in refusing to give his requested instruction directing a verdict to acquit him. The evidence on behalf of the State is as follows: On March 30, 1946, Thomas Fulton, the deceased, and Clarence M. Sullivan were working at the Paula Products Company, a factory located at 2905 Washington Avenue, St. Louis, Missouri. About 3:00 A. M. of that day Sullivan and deceased stopped work to eat their lunches which they had brought with them. The deceased went out of the factory to get his lunch and stayed so long that Sullivan went out to see about him. He found the deceased sitting in his car which was parked 10 or 15 feet from the entrance of the Paula Products Company. Deceased was seated next to the driver's seat and his face was bloody. A negro was sitting in the driver's seat trying to start the car. Sullivan identified this negro as the appellant.

Deceased asked Sullivan to help him. Sullivan took him out of the car and started toward the factory with him. He could walk with Sullivan's help. As they approached the factory the negro said, "He fell down; I am going to carry him home." The negro got out of the car and followed them almost to the factory door. When Sullivan asked him for deceased's keys, the negro started fighting him and he fought his assailant off the best he could. When they got into the factory Sullivan picked up a die and hit the negro with it. In the course of the ensuing fight the negro hit Sullivan on his head with a lead pipe, which blow caused him to lose consciousness for a brief period. When he regained consciousness he heard the negro breaking through the outside door on the other side of the office.

Immediately after he regained consciousness he called the police and officers Cohen and Eresh responded to the call. Upon making an investigation they observed blood spots upon the sidewalk in front

of the Paula Products Company. These blood spots led across the street to the corner of Washington and Ewing Avenues, from there to an alley between Locust and Washington, and down this alley where they saw the appellant sitting on a platform. The officers told him he was under arrest and he broke away from them. He ran until he bumped into a "No Parking" sign and fell down, after which the officers held him. At this time Sullivan identified him as the man with whom he had just had the struggle.

The deceased and Sullivan were taken to the City Hospital. The next morning they were taken to Missouri Baptist Hospital where Fulton died late that day. There was medical testimony to the effect that his nose was severly crushed, his facial bones pushed back into his mouth thus obstructing his breathing, his lower lip was lacerated, his mouth was full of coagulated blood, he had a long oblique laceration extending across his forehead, and all of his facial bones were fractured. In addition to the above described injuries, a post mortem examination showed that deceased had suffered a skull fracture of the right orbital plate behind the eye, there was a linear fracture of the left temporal bone, and there had been a hemorrhage of the [756] left side of the brain. Expert medical evidence was to the effect that death was caused by fracture of the skull and subdural hemorrhage of the brain. Dr. John J. O'Connor testified that the injuries sustained by the deceased could be the result of a blow by a sharp or blunt instrument. The officers found a pipe with blood stains on it at the Paula Products Company. This was identified by Sullivan as the pipe with which appellant hit him. Sullivan did not know where the appellant got the pipe, but the inference from the evidence was that he got it out of his overcoat pocket. No evidence was introduced on behalf of the appellant.

We deem the above evidence, though circumstantial, sufficient to sustain the verdict. The evidence directly shows that the deceased met his death by a blow from a sharp or blunt instrument on his head. In fact, the blow was sufficient to have fractured the deceased's skull and his facial bones. When we consider these facts along with the fact that the deceased was sitting in the seat of his automobile beside the appellant, this would exclude the theory that deceased's injuries were the result of a fall. In other words, the only reasonable inference that could be drawn from the evidence is that deceased's injuries were the result of blows inflicted by a human being. Moreover, the fact that the appellant was found sitting under the driver's wheel of deceased's car attempting to drive it away from the factory and no other person was found or seen in the neighborhood at that time, coupled with the fact that for no apparent reason appellant started fighting Sullivan, excludes any inference that some person other than the appellant inflicted the injuries upon the deceased. These facts meet the requirement of the law of this state "that cir-

·cumstantial evidence to authorize a conviction must exclude any reasonable theory of the defendant's innocence, and that the facts proven must form a complete chain, and must be consistent with each other and must point to the guilt of the defendant." State v. Taylor, 347 Mo. 607, 148 S. W. 2d 802, l. c. 805.

 We do not agree with appellant that the trial court erred in failing to instruct on manslaughter. The evidence in this case shows that the appellant hit deceased on his head with a sharp or blunt instrument and that he died from the inflicted injuries. The rule in this state is that " 'Where a homicide is intentionally committed with a deadly weapon used upon a vital part of the body and there is no witness to the occurrence, murder in the second degree is presumed in the absence of evidence tending to show a different grade of offense or that such killing was justifiable or excusable.' State v. McCracken, 341 Mo. 697, 108 S. W. 2d 372, 374; State v. Eaton, Mo. Sup., 154 S. W. 2d 767." State v. Lyle, 353 Mo. 386, 182 S. W. 2d 530, l. c. 533. The evidence in the case at bar comes within this rule. There is no evidence that would justify a manslaughter instruction.

 The appellant contends that the trial court erred in denying his challenge for cause of the juror Straub who had upon voir dire examination stated that in no case if he were convinced of appellant's guilt would he vote for anything but the death penalty. The record shows that this juror did not sit on the jury that tried this cause. It does not disclose whether this juror's name was stricken from the jury list by appellant or by the state. Straub's name may have been stricken by the state. Under these circumstances, no error appears in the record. State v. Tippett, 317 Mo. 319, 296 S. W. 132.

 The appellant contends that "the Court erred in admitting testimony, over the objection of counsel for the defendant, which testimony was given by the police officers testifying for the State, to the effect that the defendant had made no statement immediately subsequent to his arrest." Officer Harry Cohen testified about arresting the appellant. The record shows that the following took place:

"Q. Did the defendant make any statement there about anything? A. No, sir.

Mr. Shenker: We will object to that, if the court please.

The Court: Overruled.

Mr. Shenker: Exception.

A. He did not."

[757] The state contends that appellant's objection is insufficient to preserve anything for review. There can be no doubt of the fact that the question asked the witness was proper because if the appellant had voluntarily made any statement against interest it would have been admissible. Voluntary confessions are always admissible.

Assuming but without deciding that the witness's answer was error, the point is not properly before us.

Since the legal objection was not apparent from the question, it was not necessary for appellant to object prior to the witness's answer. But if appellant thought the answer was objectionable he should have moved to strike the answer out, stating the reason why the answer was inadmissible. State v. Cain, 37 S. W. 2d 416; State v. Peebles, 337 Mo. 973, 87 S. W. 2d 167. This he did not do but only stated, "We will object to that, if the court please," which objection preserved nothing for review.

Officer Frank Eresh testified in regard to arresting the appellant and about appellant's running into a "No Parking" sign and falling in the street. Then he was asked the following question, "Did the defendant make any statement there?" Appellant made the following objection, "We object to it on the ground it's irrelevant and immaterial to the points at issue in the case, corpus delecti has not been established; for the further reason it's an invasion of his constitutional right of no comment." The court overruled the objection. Officer Eresh's answer was as follows: "The defendant, after he hit the post, we asked him if he was going to lay still; he said yes, he would lay still. That was the only statement he made laying there in the street there." The appellant moved to strike the answer as it was not an admission against interest, which motion was overruled.

The law in this state is that "Silence of the accused when not under arrest, and in circumstances such that only a guilty person would have remained silent, may be shown. After arrest or while in custody the evidence is inadmissible because he is under no duty to speak. State v. Bowdry, 346 Mo. 1090, 145 S. W. 2d 127, 129 (5). The same is true of undenied accusations made by third parties in his presence. State v. Kissinger, 343 Mo. 781, 786, 123 S. W. 2d 81, 84 (4)." State v. Dowling, 348 Mo. 589, 154 S. W. 2d 749, l. c. 755.

In both the Bowdry and the Dowling cases officers were questioning the defendants about the alleged crimes but they remained silent, while in the Kissinger case a third party made a statement in the presence of the defendant about the alleged crime and the defendant remained silent. Under these circumstances, we held that the fact that the arrested accused remained silent was prejudicial error as an invasion of his constitutional rights.

All of the cases where we have held that it was error to prove that the arrested person remained silent were cases where the persons were asked about the alleged crime or where someone made a statement about the alleged crime in the presence of the accused. See Mo. Digest, Vol. 9, Key 407.

In the case at bar, the appellant was not asked about the crime or was anything said about the crime in his presence by anyone. The only thing asked him was whether he would lie still, to which he

answered in the affirmative, and made no other statement. Certainly, appellant could not be prejudiced under these circumstances. Suppose that when a defendant was arrested he asked the arresting officer to telephone his wife and tell her he was arrested. Certainly this fact would not prejudice the arrested person. We hold that the appellant's assignment is without merit.

Appellant further contends, "The Court erred in giving Instructions One and Two to the jury. For though the Court also gave to the jury in Instruction Three an instruction on circumstantial evidence and the degree of proof required of circumstantial evidence, yet Instructions One and Two would warrant the jury in finding the defendant guilty if they could merely 'reasonably infer' the necessary ingredients of the crimes alleged from the circumstantial evidence presented at the trial. These Instructions, then, are in conflict with Instruction [758] Three, and thus prejudicial to this defendant."

Instructions one and two ended with the following paragraph: "And while it devolves upon the State to prove wilfulness, deliberation, premeditation and malice aforethought beyond a reasonable doubt, all of which are necessary to constitute murder in the first degree (or 'without deliberation' for murder in the second degree), yet these need not be proved by direct evidence, but may be deduced from all of the facts and circumstances attending the killing, and if the jury can satisfactorily and reasonably infer their existence from all the evidence, you will be warranted in finding the defendant guilty of murder in the first degree (or second degree), and unless you so find the facts to be you shall acquit the defendant of murder in the first degree (or second degree)."

Appellant contends that the phrase, "and if the jury can satisfactorily and reasonably infer their existence from all the evidence, you will be warranted in finding the defendant guilty," permits the jury to return a verdict of guilty without finding defendant guilty beyond a reasonable doubt. When the instructions were read as a whole the jury was informed that they must find defendant guilty beyond a reasonable doubt. Wilfulness, deliberation, et cetera, are concepts of the mind which are ordinarily shown from the facts and circumstances. The instructions fairly advised the jury and we think the jury fully understood their purport and meaning. State v. Nasello, 325 Mo 442, 30 S. W. 2d 132.

Appellant further contends that the above quoted phrase of instructions one and two conflicts with instruction three. Instruction three was a circumstantial instruction and appellant concedes it is in proper form. It informed the jury that they could find the appellant guilty only if they found the facts and circumstances to be consistent with each other and with the guilt of the appellant, and absolutely inconsistent with any other reasonable theory than his guilt, while instructions one and two required the jury to find appel-

lant guilty beyond a reasonable doubt. Appellant's argument is that "this 'beyond a reasonable doubt' criterion" should not suffice if the evidence is wholly circumstantial. He contends that instructions one and two embody that rule on circumstantial evidence as stated in instruction three. Instructions must be read as a whole and when these instructions were so read they fairly informed the jury of the law of this case. There is no merit in appellant's contention.

Appellant contends that these two instructions are erroneous because they are an improper comment upon the evidence and assume facts that should be left for the jury to find. These instructions did require the jury to find that appellant "did strike, beat and wound one Thomas Fulton, with a dangerous and deadly weapon, such as the piece of iron pipe introduced in evidence in this case," but we are of the opinion that this phrase is not a comment upon the evidence and does not assume facts that should be left to the jury. In the cases of State v. Dunn, 221 Mo. 530, 120 S. W. 1179 and State v. Myers, 198 Mo. 225, 94 S. W. 242, the almost identical instruction was approved against the attack now made by the appellant.

The judgment of the trial court should be affirmed. It is so ordered. All concur.