STATE of Missouri, Respondent,

v.

Jimmie Lee PERKINS, Appellant.

No. 50090.

Supreme Court of Missouri,

Division No. 2.

July 13, 1964.

Motion for Rehearing or for Transfer
to Court En Banc Denied
Oct. 12, 1964.

**702**

Thomas F. Eagleton, Atty. Gen., James J. Murphy, Asst. Atty. Gen., Jefferson City, fo respondent.

Robert G. Duncan, Simon & Pierce, Kansas City, for appellant.

STORCKMAN, Presiding Judge.

This appeal is from a conviction of murder in the second degree. Since the defendant was found to have been previously convicted of two felonies, his punishment was assessed by the court and fixed at twenty years' imprisonment. The questions presented relate to the sufficiency of the evidence to sustain the conviction, the admissibility of photographic evidence, the propriety of the state's jury argument, and the refusal of an instruction offered by the defendant.

At about 3:30 a. m. on September 1, 1961, the defendant went to the home of his brother who lived on a farm in Howard County near Higbee where he obtained a British .303 rifle and several shells. The defendant told his brother he wanted to practice shooting in preparation for deer hunting and that he was going to Fayette. At about 7 a. m. on the same day the defendant was observed knocking on and trying to open a screen door at a side entrance of the house where the victim of the homicide, William Wallace Yeakey, was living at 307 Buchanan Street in Moberly. The house was a small one, all on one floor, apparently consisting of a bedroom, kitchen and bathroom. When no one answered the defendant went to the home of a next-door neighbor, Mrs. Iva Leona Young, and inquired who lived in the house where he had been knocking. Mrs. Young answered "neighbor folks" or "some friends". The defendant then returned to the Yeakey home, knocked again and Mr. Yeakey came to the door. At this time the defendant had something in his hand which he did not have when he was at Mrs. Young's door.

While the defendant and Yeakey were talking at the side door of the Yeakey house, Mrs. Young heard a voice she thought was Yeakey's say he did not want any part of it and that he did not want any trouble with either one of them. Yeakey then tried to pull the screen door shut but the defendant grabbed it and Yeakey fastened the inside door, whereupon the defendant broke the glass in the door and with a blanket over his hands reached in and unlocked the door. Mrs. Young heard a shot fired when the defendant was outside the house and observed the defendant side-step or "zig-zag". She then went across the street to the home of Mrs. Kitchen who had a telephone, but who was too nervous to use it to call the police.

The defendant's wife, Grace Perkins, had been living with Yeakey as his wife for some time and was known in the neighborhood as Mrs. Yeakey. Some time after the trouble started, she left the Yeakey house and went to the Kitchen home where she called the police and waited for them to arrive. The police found Mr. Yeakey severely wounded and unconscious on an end table or vanity bench in the bedroom. There was blood on the bed which had been slept in. Blood was also on the floor directly under Yeakey's head and some was on two walls. There was a bullet hole in the wall just below the ceiling and there were fragments of bullets in a chest of drawers. A shotgun with a broken stock was laying on the bed, part of the stock was on the bed and the other part was on the floor. The magazine of the

shotgun had been struck by a bullet from a rifle. A shell in the shotgun's magazine had been pierced by the bullet and shot from the ruptured shell were on the bed and elsewhere. The shotgun had been rendered inoperable by the bullet that hit the magazine.

Mr. Yeakey was taken to a hospital where he died shortly after arrival. At a funeral home pictures were taken of the body and an autopsy was performed. There were two curved lacerations on the left side of the head within the hairline. One was in front of and the other was directly above the left ear, both in the region where the bones of the skull are the thinnest. Beneath these lacerations the skull was shattered and there was a fracture across the base of the skull. Lacerations of the brain and hemorrhages were the immediate cause of death. Yeakey's left ear was almost severed. The side of the left jaw was fractured. There were multiple abrasions on the left cheek, slash wounds on the left side of the neck, the left upper arm, the right forearm, the left hand between the thumb and first finger, the palm of the right hand and above and below the left eye. His left shoulder was peppered with fragments of metal and the knuckles of his left hand were fractured and crushed. A pathologist testified that the fatal head wounds were caused by a heavy, curved, blunt object and considerable momentum was behind the blows. The wounds could have been caused by the butt of the Enfield rifle which was state's exhibit 9.

On September 5, 1961, four days after Yeakey's death, the defendant's wife delivered to the Moberly police a British .303 Enfield rifle. While the rifle was not positively identified as the same one obtained by the defendant from his brother shortly before Yeakey was killed, it was the same make and model and had a hole in the butt identical in size to a hole which was in the butt of the rifle borrowed by the defendant. After talking to Mrs. Perkins on September 5, the police went to a motel at Centralia and arrested the defendant. While transporting him from Centralia to Moberly, Mr. Omar Winn, chief of the Moberly Police Department, asked the defendant about the events on September 1 and "if he had used a knife on the man." The defendant stated that he had not used a knife, that he only used the rifle. The defendant also told Mr. Winn that when he arrived at the house, he "asked Yeakey to see his wife and he was told that she wasn't there and he said he knew better because he had saw her through the window. So, he broke the glass in the door and when he did that he said that he saw Yeakey with a shotgun and thought he was going to shoot him, so he fired the rifle, three or four times." Mr. Winn also mentioned two parallel cuts about one inch apart on Yeakey's forearm about ten inches long and similar cuts on the left side of his face. The defendant said these cuts were apparently made by the sights on the rifle because he did not use a knife. When the defendant was arrested, there was no wound, bruise or abrasion on him except a slight scratch on one finger. The rifle and shotgun were examined in the State Highway Patrol Laboratory and a technician testified that the sight ramp of the shotgun or one like it made impressions found on the forestock of the rifle. There was evidence that Yeakey had a bad reputation for turbulence and violence. The defendant and his wife did not testify, and there was no evidence offered on his behalf.

█ The defendant asserts that the verdict is against the weight of the credible evidence and that the court erred in failing to sustain his motion for judgment of acquittal. An appellate court does not weigh the evidence in a criminal case and that part of the assignment preserves nothing for review on appeal. State v. Ramsey, Mo., 368 S.W.2d 413, 418[10]; State v. Goacher, Mo., 376 S.W.2d 97, 103[3].

██ In determining the sufficiency of the evidence on a motion for judgment of acquittal in a criminal case, the reviewing court must consider as true the evidence

favorable to the state together with favorable inferences that can reasonably be drawn therefrom and must disregard evidence and inferences to the contrary. State v. Sykes, Mo., 372 S.W.2d 24, 26[3]; State v. Strong, Mo., 339 S.W.2d 759, 764[3].

"Murder in the second degree includes all common-law murder not made murder in the first degree by Section 559.010 RSMo 1949, V.A.M.S. State v. Curtis, 70 Mo. 594. Therefore, generally speaking, murder in the second degree is the killing of a human being wilfully, premeditatedly, and with malice aforethought, but without deliberation. * * * Premeditation means thought of beforehand for any length of time, however short." State v. Baber, Mo., 297 S.W.2d 439, 441[1–4]. The evidence in the case and the reasonable inferences therefrom tend to prove a vicious and brutal assault upon Yeakey by the defendant and the delivery of the coup de grace by the defendant with the butt of the rifle after his victim had been disarmed and disabled. There is substantial evidence to support the verdict of murder in the second degree and the trial court did not err in overruling the defendant's motion for a judgment of acquittal. State v. Clark, Mo., 111 S.W.2d 101, 102[2]; State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 756[4]; State v. Bayless, 362 Mo. 109, 240 S.W.2d 114, 120[6]; State v. Thomas, Mo., 309 S.W.2d 607, 608[2]; State v. Tisdale, Mo., 353 S.W.2d 719, 721 [1]; State v. Goacher, Mo., 376 S.W.2d 97, 102–103[1, 5].

■ The defendant contends the state committed prejudicial error in admitting over his objection state's exhibits 10 and 12. These exhibits are photographs of portions of the body of the victim taken at the mortuary within two hours after the death. Exhibit 10 shows the bare body from the waist up. Exhibit 12 is a picture of the left side of the head. The assignment is that the pictures were "gruesome and inflammatory and did not tend to prove or disprove any material issue." The cases cited by the defendant as well as the state recognize the rule that photographs are admissible if they tend to establish or clarify any material matter at issue even though the exhibits are gruesome and tend to agitate the feelings of the jurors. State v. Floyd, Mo., 360 S.W.2d 630, 632[1–3]; State v. Moore, Mo., 303 S.W.2d 60, 66[3].

During a discussion in support of an objection, the defendant admitted that Yeakey's death was caused by a compound comminuted fracture of the skull, but the issues went beyond that. The court did exclude two photographs of the interior of the skull taken during the autopsy which showed the fragmentation of the skull in the area of the left temple. This condition was described by the medical witness. The doctor who performed the autopsy testified in regard to his findings and stated that the exhibits, 10 and 12, did not show anything in addition to the matters about which he had testified. Such a statement is not conclusive since it is for the trial court and not the witnesses to determine the competency and materiality of the evidence offered.

■■ Among other things, photographs are admissible to show the nature and location of wounds, to refute self-defense, and to corroborate and clarify the testimony of witnesses. The parallel slash marks on the victim's arm and face and the wounds in the area of the left temple are better understood when viewed on the exhibits than when described orally or in the written record. The extent and location of other wounds on his hands and face are more vividly portrayed and bear on the ability of Yeakey to be an aggressor at the time he was mortally wounded. In his statement to the police the defendant said he saw Yeakey with a shotgun and he thought Yeakey was going to shoot him. An instruction on self-defense was given and the issue was argued to the jury. In oral argument defendant's counsel also suggested that Mrs. Perkins might have quarreled with Yeakey and inflicted the wounds. The force and violence of the beating vividly shown by the exhibits throws light on whether the wounds and con-

sequent death were inflicted by an outraged husband or the faithless wife who had been living with her paramour for some time in apparent harmony. For these and other reasons the photographs constituted material evidence, and the facts that they were gruesome was an unavoidable incident of a proper purpose. The trial court did not err in admitting them. State v. Moore, Mo., 303 S.W.2d 60, 66[5]; State v. Laspy, Mo., 298 S.W.2d 357, 361[7]; State v. Tyson, 363 Mo. 1242, 258 S.W.2d 651, 654[4]; State v. Morris, Mo., 248 S.W.2d 847, 849[2].

Next the defendant charges that the trial court committed prejudicial error in overruling defendant's objections to the jury argument made by the prosecuting attorney "which was an indirect reference to the appellant-defendant's failure to testify" and in refusing to grant a mistrial. Two incidents complained of occurred during the state's opening argument and are quite similar. The first instance is in this context with the part complained of italicized: "It is the State's theory of this case that there was no fight, because I don't know of any evidence of a fight. *And the only evidence in the case is the evidence that the State produced.* We tried hard to find evidence of a fight." The defendant did not object to this statement when it was made.

The second incident occurred in this fashion, also during the opening argument: "You have the duty to find out through your deliberation based on the evidence, the only evidence produced was the State's evidence, whether or not he is guilty—

MR. CARMODY: (interrupting) I am going to object to that and ask the Court to declare a mistrial. He has no business commenting whatsoever on the matter of the accused not being on the stand.

"THE COURT: The objection will be overruled."

Continuing his argument, the prosecuting attorney stated in substance that he had brought in a lot of evidence, a lot of work has been done and it was his job to present the evidence; that the state had the burden of proof in the case, that it had to prove the defendant guilty beyond a reasonable doubt, that the law so provided as the jurors would find in the court's instruction, and that the proof showed the defendant guilty beyond a reasonable doubt.

The third incident occurred near the beginning of the state's rebuttal argument. The prosecuting attorney started by telling the jury that he thought that he had been misquoted by defendant's counsel during their oral argument. One of defendant's counsel interrupted with the statement that he was confident that the prosecuting attorney did say the things attributed to him, but there was no objection and the court directed the prosecuting attorney to proceed. The following then occurred: "MR. BLAEUER: (continuing argument) I represent the people of this County and if you think my duty is any less than theirs, then you would have to be mistaken. If you were accused of murder, you were accused of murder in the first degree and you were innocent of that crime and could prove that you were innocent of that crime, wouldn't you do it?

"MR. CHAMIER: If the Court please, that is a direct violation of the Court's instruction, that this man is to be considered and presumed innocent until he is proved guilty.

"MR. CARMODY: I ask that he be repremanded and the jury discharged.

"Mr. BLAEUER: If the Court please, I ask to tie it in with the balance of my statement?

"THE COURT: Objection will be overruled. Proceed."

The prosecuting attorney's argument immediately following was to the effect that if a defendant was innocent because he had a legal defense, such defense in the wisdom of his lawyer would be brought to the attention of the jury; that the purpose of the second stage of his argument was to rebut the defendant's argument which he was trying to do, but he did not know from the

argument of defendant's counsel whether the defense was self-defense, or that the defendant killed Yeakey in the heat of passion, or that the defendant's wife or some other person killed him.

Section 546.270, RSMo 1959, V.A.M.S., provides that the failure of the defendant or his wife to testify "shall not be construed to affect the innocence or guilt of the accused, nor shall the same raise any presumption of guilt, nor be referred to by any attorney in the case * * *." See also S.Ct. Rule 26.08, V.A.M.R. "Any argument by a state's attorney urging the cogency and compelling force of the state's evidence and a conviction, especially in a case in which there are no witnesses and no evidence on behalf of the accused, may cause the jury to exercise their function of reasoning upon the evidence and finally to observe the apparent fact that the accused not only has no witnesses and no evidence but that he did not testify. But the arguments of state's attorneys under those circumstances do not constitute an infringement of the prohibition of the statute." State v. Hayzlett, Mo., 265 S.W.2d 321, 324[5, 6].

■ We have no difficulty disposing of the first two incidents complained of. Treating both of them as having been properly objected to, the argument is the practical equivalent of saying that the evidence on behalf of the state is uncontradicted or undisputed, which does not constitute prejudicial error. State v. Willis, Mo., 328 S.W.2d 593, 595[7]; State v. Powell, Mo., 357 S.W. 2d 914, 918[5]; State v. Michael, Mo., 361 S.W.2d 664, 666–667[6–8]. Furthermore, the second of these episodes was followed by a full recognition and discussion by the prosecuting attorney of the state's burden of proof and of its obligation to prove the defendant's guilt beyond a reasonable doubt.

The final portion of the argument assigned as error occurred during the closing or rebuttal argument on behalf of the state. In State v. Beasley, 353 Mo. 392, 182 S.W.2d 541, 544[6], this court observed that "the State's counsel can go further by way of retaliation, in answering arguments of the defendant's counsel, than he would be authorized to do in the first instance."

■ Each side was allowed an hour and a half for oral argument. Counsel for the defense argued the case vigorously and with few objections by the state. They were accorded a wide latitude in their arguments, attacked the state's evidence and the state's failure to produce additional evidence, and suggested several theories on which there could be reasonable doubts of their client's guilt. In beginning his rebuttal, the prosecuting attorney referred to the fact that the state had a theory about the case and asked the rhetorical question of the jury if they were innocent of a crime charged and "could prove that you were innocent of that crime, wouldn't you do it?" The objection was that the argument was in direct violation of the court's instruction that the defendant was presumed to be innocent until proved guilty. During the discussion of the objection, the prosecuting attorney asked to be permitted "to tie it in with the balance" of his statement, but he had no opportunity to explain at that time. When he continued his argument, the prosecuting attorney paid tribute to the ability and resourcefulness of defense counsel and in effect stated that because of the various and diverse theories and suggestions put forward by the defense in argument he did not know what to rebut. In context it appears that the use of the word "prove" was inept. Apparently the idea the prosecuting attorney was seeking to express was that defense counsel in their oral arguments had failed to adopt any particular theory of defense and had not demonstrated that there was a reasonable doubt of the defendant's guilt.

The argument here in question is not violative of the restrictions of § 546.270 because, considered in context, it deals primarily with the weight and sufficiency of the state's evidence. On the record before us we hold that the argument complained of does not constitute prejudicial error. State v. Johnson, 362 Mo. 833, 245 S.W.2d

43, 46[1]; State v. Hayzlett, Mo., 265 S.W.2d 321, 324[5, 6]; State v. Varner, Mo., 329 S.W.2d 623, 633[18]; State v. Romprey, Mo., 339 S.W.2d 746, 755[25]; State v. Garcia, Mo., 357 S.W.2d 931, 935[10, 11]; State v. Sawyer, Mo., 367 S.W.2d 585, 588 [9]; State v. Siekermann, Mo., 367 S.W.2d 643, 651[17]. Nevertheless, this is always dangerous ground and the best way for prosecutors to avoid the quicksands is to stay away from them. We adhere to the admonitions of Varner, 329 S.W.2d loc. cit. 633.

The defendant offered instruction A which the court refused. The instruction in effect told the jury that they may not consider the failure of the accused to take the stand in determining his guilt or innocence, that the jury may not draw any unfavorable inference from such failure, and that the prosecuting attorney may not comment on the accused's failure to testify in his behalf since the state under the law has the burden of proving his guilt beyond a reasonable doubt. In State v. Long, 324 Mo. 205, 22 S.W.2d 809, 813[17], a similar instruction offered by the defendant was held to have been properly refused in that giving it would have been in direct violation of § 546.270. This court has consistently ruled that the failure to give such an instruction even when requested by the accused is not error. State v. Denison, 352 Mo. 572, 178 S.W.2d 449, 455[13, 14]; State v. Rutledge, Mo., 267 S.W.2d 625, 626[5]; State v. West, Mo., 356 S.W.2d 880, 882[6].

We have considered all of the specifications of error presented by the defendant and find them to be without merit. The defendant was present throughout the trial, including his allocution and sentencing. He was effectively represented by able counsel at the trial and on appeal. We have also examined the parts of the record and entries designated in S.Ct.Rules 28.02 and 28.08 and find them to be proper in form and free from error. Accordingly the judgment is affirmed.

All of the Judges concur.