STATE of Missouri, Respondent,

v.

Lester Eugene KIRKPATRICK, Appellant.

No. 52694.

Supreme Court of Missouri,
Division No. 1.

June 10, 1968.

514

Norman H. Anderson, Atty. Gen., Jefferson City, Peter J. Maniscalco, Sp. Asst. Atty. Gen., Clayton, for respondent.

Robert A. McIlrath, Flat River, for appellant.

HIGGINS, Commissioner.

Appellant, charged by information with burglary in first degree in that he did "unlawfully and feloniously (and) burglariously break and enter the dwelling house of Lyman H. Kimes * * * in which dwelling there was at the time a human being, * * * by forcibly breaking or bursting the outer door of the said dwelling house with the felonious * * * intent to rape one said Madelon Kimes * * *," was convicted of that offense by a jury which assessed his punishment at 15-years' imprisonment in the penitentiary. Sentence and judgment were rendered accordingly. Sections 560.040 and 560.095, V.A.M.S.

Appellant does not question that the State made a submissible case, and a brief statement demonstrates the sufficiency of evidence for that purpose.

Madelon Eloise Kimes, aged 17, lived with her parents, Mr. and Mrs. Lyman Kimes, in their home in Piedmont, Wayne County, Missouri. On the night of May 19, 1966, she was home alone with the doors locked when defendant, Lester Eugene Kirkpatrick, a codefendant, Jim Lashley, and John Bauer "hit the doorbell to come in." She went to the door and asked who it was. "Someone said, 'Moby (defendant Kirkpatrick).' I said, 'What do you want?' He said, 'Let me in, I want to talk to you.' I said, 'No,' and I went over and called my parents on the telephone. * * * Someone kicked the door once, then they kicked it again the second time and it came open and three boys walked in and Johnny (Bauer) came over and took the phone out of my hand and he put it back on the hook and I asked him what did they come for. * * * They said they came to screw me whether I wanted to or not. * * * I tried to leave and Johnny (Bauer) got in front of me and he said, 'Where do you think you are going?' I said, 'I am leaving.' He said, 'No, you aren't. Sit down.' When I didn't sit down Jim (Lashley) came over * * * with a hammer and he threatened to hit me if I didn't sit down. Moby told me to go upstairs and take my clothes off and when I refused * * * Johnny Bauer got behind me and him and Jim Lashley followed me up the steps to make sure I started taking my clothes off. All three boys had intercourse with me upstairs. * * * the first one was Jim Lashley. He said, Get with it or I will choke you."

Prosecutrix admitted previous relations with Kirkpatrick and Lashley, but on this occasion refused to talk to or see Kirkpatrick because she was mad at him and had relations only "because I was afraid of them."

Sergeant Kenneth Marion Link of the Missouri State Highway Patrol was at the scene May 20, 1966, and described the Kimes's dwelling house as having a screen door to the screened front porch. The screen in the door bore a 3-inch cut near the latch. The front door itself was "an ordinary pine, paneled door. It had been apparently secured by a night chain, which was attached from the door to the door facing, which was a one by five ordinary pine board framing. This chain on the door was forced, pulled the facing, the inside facing, off."

Kendall Bernaix, Deputy Sheriff of Wayne County, saw that the screen door "had a hole something like two inches across. It had been opened with a sharp instrument and rounded where they could reach a finger in and trip the latch. * * The wooden door showed two separate footprints * * *." The front door "had a safety chain latch inside. * * * the complete board (facing) had been torn loose, pulled in with the door."

Lester Eugene Kirkpatrick testified in his defense that the sexual relations he had with the prosecutrix were without force and with her consent. He admitted that the prosecutrix did not open the door to him and his companions. Asked how he opened the door, he said, "Pushed and shoved and kicked it."

■ The foregoing was sufficient to support a reasonable finding that defendant broke the outer door or the lock on the outer door of the Kimes dwelling. It also was sufficient to support a reasonable finding of forcible rape of a female occupant of the dwelling and was, therefore, sufficient to support a finding of burglary of a dwelling with intent to commit a felony therein within the meaning of Section 560.040, supra. State v. Terry, Mo., 325 S.W.2d 1, 6 [7].

Appellant charges the court with error "in refusing to grant a new trial, when the misconduct of a juror in failing to disclose his prejudice against the defendant on voir dire examination was made known to the Court, because it was obvious that the defendant was deprived of his right to trial by a fair and impartial jury."

This point was presented to the trial court by motion for new trial. Evidence was heard and the following portions are pertinent to resolution of this issue.

From Lester Eugene Kirkpatrick being questioned by his trial attorney, Mr. McIlrath:

"Q You were here when I questioned the jury as to their qualifications? A Yes, sir.

"Q Do you remember me questioning one Robert Wallis? A Yes, sir. * * * You asked him if he had ever made any statements regarding the defendants in this trial, or heard anything about this trial. * * * He said he had not. * * *

"Q Did I ask him anything about whether he was biased or prejudiced? A Yes, you did. * * *

"Q What was his answer? A He said he was not. * * *

"THE COURT: Is it your contention this man, Robert Wallis, was a member of the jury in this case?

"MR. McILRATH: * * * I don't contend he stayed on the jury, Judge. He was one of the 24 that was there."

From the examination of Wilburn Webb:

"Q Do you know a fellow by the name of Wallis? A Yes sir. Q Prior to the time of trying this case were you in a tavern over at Piedmont, Missouri? A Yes, sir.

"Q Was Robert Wallis there? A He was at the end of the bar in Jimmy Seals' tavern, The Ozark Tavern.

"Q Did this case come up about these boys, Kirkpatrick and Lashley? A Yes, sir. * * *

"Q What was the discussion that took place there in your presence? A I said

something to him (Seals) about as to the burglary that was supposed to have happened at his place. He said, 'Well, I know the little hoodlems (sic) who done it.' He said, 'Jim Lashley, Bauer and Kirkpatrick.' He said, 'The little hoodlems (sic) ought to all be in the penitentiary.'

"Q What did he say about this trouble with the little girl at that time? A We was talking about the tavern being broke into and it was mentioned about the boys supposed to have raped Madelon Kimes a few days before that, then the discussion started about the T.V. and breaking into the place.

"Q Was Mr. Wallis there listening to that? A Yes.

"Q Did he comment? A Mr. Wallis never said a word. He just looked over and kind of grinned."

Cross-examination:

"Q Had you previous to just a few minutes ago, told Mr. McIlrath that Mr. Wallis was even present when the statements were made? A Yes, sir.

"Q When * * *? A Whenever they was selecting the jury. * * * I told him I didn't think the man should be on the jury because I knew that he was prejudiced against this boy.

"Q Did you tell him that Mr. Wallis shouldn't be on the jury or Mr. Seals shouldn't be on the jury? A Wallis and Seals * * *.

"Q You were there at the time to testify that Mr. Seals and Mr. Wallis had made those remarks? A Yes, sir, if I had been asked.

"Q Did you inform Mr. McIlrath you were willing to do that? A I told Mr. McIlrath that Wallis and Seals were prejudiced to these boys and that I didn't advise him to have them on the jury, that I didn't think they should be on there. * * * He just marked them off the jury paper and that was it at the time."

Robert A. McIlrath, defendant's trial attorney and attorney on this appeal was called by the prosecutor and sworn:

"Q Your name is Robert A. McIlrath? A Yes, sir.

"Q How long have you been practicing law in this area? A Since 1936.

"Q Have you tried very many criminal cases? A I try quite a few, yes.

"Q When did you first hear that Mr. Wallis and Mr. Seals had made remarks? A I heard that before I qualified the jury.

"Q Before you questioned the jury? A Before I questioned the jury. * * * I questioned these men very closely on the matter. I am entitled to 24 men. I questioned them closely and they said they were not biased or prejudicial. I struck them from the jury because of the information I had."

The trial court indicated that had these matters been placed before the court by challenge for cause during the voir dire, the court would have excused any juror so involved; but since counsel, knowing of the panelists' remarks and in his strategy, chose to use peremptory challenge rather than for cause, they, in neither event, served and defendant was not thereby prejudiced.

There is no question that a defendant in a criminal case is entitled to a full panel of qualified jurors before he is required to make his peremptory challenges, State v. Foley, 144 Mo. 600, 46 S.W. 733, 735 [1]; State v. Naylor, 328 Mo. 335, 40 S. W.2d 1079, 1083 [7]; and that prejudice of a juror, concealed on examination and discovered only after verdict, is ground for a new trial. State v. Burnside, 37 Mo. 343, 348. Appellant's complaint here is that he was forced to use a peremptory challenge to strike juror Wallis due to his failure to reveal his prejudicial knowledge.

Under the statutes, Sections 546.150 and 546.160, V.A.M.S., challenges for cause are to be tried by the court, on the oath of

the person challenged, or on other evidence, and "before the jury is sworn, if the cause of challenge is discovered before the jury is sworn." State v. Foley, supra, 46 S.W. 1. c. 735 [1]. This record shows that there was no prejudicial concealment because defendant, through his attorney, had full knowledge of the allegedly prejudicial state of mind of the venireman in question at the time he was examined. It shows also that a witness, Wilburn Webb, was available to prove the challenge if necessary. Yet with this full knowledge, counsel elected to forego a challenge for cause and use a peremptory challenge. Under such circumstances, it cannot be said that the defendant was compelled to use a peremptory challenge to his prejudice. See State v. Tippett, 317 Mo. 319, 296 S.W. 132, 135 [9], and State v. Battles, 357 Mo. 1223, 212 S.W.2d 753, 756 [5], where, even though challenges for cause were made and overruled, no prejudice to the defendants resulted when the jurors in question were thereafter stricken peremptorily by one or the other of the parties and did not sit in the trial. Appellant's remaining citations, State v. Wyatt, 50 Mo. 309; State v. Hutchinson, Mo. App., 289 S.W. 969, 970 [3]; State v. Taylor, 64 Mo. 358, 362; State v. Gonce, 87 Mo. 627, and State v. Connor, Mo., 274 S.W. 28, 30, are distinguished from this case and State v. Tippett and State v. Battles, supra, because a biased juror actually sat in the trial of those cases.

Appellant charges the verdict of the jury was so excessive under the facts herein as to demonstrate the prejudice of the jury toward the defendant and "if prejudice finds its way into the verdict, the verdict cannot stand." State v. Allen, 363 Mo. 467, 251 S. W.2d 659; State v. Webb, 254 Mo. 414, 162 S.W. 622; State v. Burns, 286 Mo. 665, 228 S.W. 766; State v. Tiedt, 357 Mo. 115, 206 S.W.2d 524. The argument is that the verdict was excessive and thus demonstrative of prejudice because the evidence shows the prosecutrix to have consented to sexual relations with the defendant and others on prior occasions.

■■■ Punishment will not be deemed excessive or the result of prejudice merely because it may be assessed at or near the maximum provided by the statute for the offense in question; and it is the jury's function to assess punishment, within statutory limits, subject to the trial court's discretionary power to reduce it, and to justify interference with a sentence upon appeal, passion and prejudice should so clearly appear from the record that the appellate court may confidently say the trial court abused its discretion when it declined to reduce the allegedly excessive punishment. State v. Laster, 365 Mo. 1076, 293 S.W.2d 300, 315 [3]. Section 560.095 fixes punishment for this offense at imprisonment for a term of from five to twenty years, and the jury's verdict is within that range at fifteen years. The matter was presented in the motion for new trial to the trial court which saw fit not to interfere and the record does not clearly dictate interference by this court. State v. Gillespie, Mo., 336 S.W.2d 677, 683[11, 12].

■■■ Appellant's argument is of no avail. The evidence supports a reasonable finding that the prosecutrix did not consent to intercourse with defendant on this occasion because " 'consent induced by fear of personal violence is no consent,' " State v. Schuster, Mo., 282 S.W.2d 553, 556 [1], and "in a prosecution for rape where consent or lack of resistance is an issue, an attack upon the character of the prosecuting witness for morality and chastity can only be made by evidence of her general reputation in that regard and not by proof of specific acts of misconduct with other men." State v. Kain, Mo., 330 S.W.2d 842, 845 [4].

Matters of record for review under Criminal Rules 28.02 and 28.08, V.A.M.R., are free of error.

Judgment affirmed.

HOUSER and WELBORN, CC., concur.

PER CURIAM:

The foregoing opinion by HIGGINS, C., is adopted as the opinion of the court.

All concur.