STATE of Missouri, Respondent,

v.

Jerry HUMPHREY, Appellant.

No. 55607.

Supreme Court of Missouri,
Division No. 2.

Jan. 11, 1971.

Motion for Rehearing or to Transfer to Court En Banc Denied Feb. 8, 1971.

John C. Danforth, Atty. Gen., Craig A. Van Matre, Asst. Atty. Gen., Jefferson City, for respondent.

Robert C. Babione, St. Louis, for appellant.

BARRETT, Commissioner.

A jury found the appellant Jerry Humphrey guilty of tampering with a motor vehicle, the information charged that he feloniously "did drive, use and operate a certain motor vehicle, to wit: an automobile, to wit: Chevrolet make, 1961 model; the property of John Hunter without the permission so to do of John Hunter." RSMo 1969, § 560.175, V.A.M.S. Since Jerry had a prior felony conviction the court fixed his punishment at five years' imprisonment. RSMo 1969, § 560.180.

In brief, the circumstances of the charge and conviction were these: Hunter owned a black 1961 Chevrolet. On Saturday night, October 25, 1969, between 10:30 and 11 o'clock Hunter parked and locked his automobile at his residence, 2311 Dickson. About 1:30 in the morning, the 26th, Hunter's wife looked out a window and the automobile was missing. Hunter next saw and identified his automobile in police custody, the "little side glass was broke" and the ignition had been disconnected or unlocked. Hunter testified that he had not given Humphrey or any other person permission to open, drive or operate his Chevrolet. Patrolman Edwards, cruising east in the 5100 block of Delmar was attracted to a 1961 black Chevrolet traveling west, Jerry Humphrey driving, because the hood was up and there was a coat on the left fender. The officer stopped the automobile, Humphrey was alone in the car, got out on request on the driver's side. The officer had been informed that the automobile had been involved in an accident. He inquired about the hood, advised Humphrey of his rights and took him to the hospital. Laverne Jackson testified that as she crossed the street at Kingshighway and Enright at 1:30 a.m. with her coat on her arm she was brushed or struck by a passing automobile and her coat jerked from her arm. Laverne identified the coat Patrolman Edwards took from the fender. These circumstances, needless to say, support the charge and the jury's finding and verdict. State v. Edmonson, Mo., 309 S. W.2d 616.

The appellant does not challenge the sufficiency of either the information or the proof, his claim is that for five reasons he is entitled to a new trial. The first two of his claims are an attempt to invoke the rules applied in State v. Dowling, 348 Mo. 589, 154 S.W.2d 749 and, inferentially in Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, the Dowling case involving the state constitutional and statutory safeguard against self-incrimination. Specifically the appellant's two points involve the rules, one, "that silence of the accused when not under arrest, and in circumstances such that only a guilty person

would remain silent, may be shown," two, "(a)fter arrest or while in custody the evidence is inadmissible because he is under no duty to speak." State v. Phelps, Mo., 384 S.W.2d 616, 621. It should be carefully noted that in the Dowling case the defendant was under arrest and refused to explain his absence or say where he had been for a year when he was sought in the Londe bombing. And in State v. Phelps the defendant was under arrest and when questioned "about this robbery" he "just refused to answer questions at all." These rules were most recently involved in State v. Stuart, Mo., 456 S.W.2d 19, a conviction of burglary and stealing. But there, it should be carefully noted, the state's case was for the most part dependent on the defendant's recent possession of stolen property, rifles, a radio and "a variety of coins." A juror asked the question "Did either one of these guys claim that money?" The court applied the rules announced in the Dowling and Phelps cases and held that the admission of the evidence of the officer's negative answer "constitutes an invasion of an accused's constitutional rights." Other cases truly involving these principles are State v. Battles, 357 Mo. 1223, 212 S.W.2d 753 and State v. Vainikos, Mo., 366 S.W.2d 423.

In the trial of this cause the two incidents claimed as falling within the noted cases occurred during the examination of Patrolman Edwards. The first incident was this: He had told about stopping the automobile, the hood up, the coat on the fender and then he said, "I went back to the scene where the accident occurred." There was an objection of irrelevancy but the officer continued with his answer "where I asked him for a statement which he refused to give me." The second incident was this: Patrolman Edwards testified that he had checked out the vehicle and found that it belonged to Hunter. Then there was this question and answer: "Q. Now, did Mr. Humphrey produce any title for that car? A. No." As indicated, the appellant urges that these two incidents fall within the condemnation of the Stuart, Phelps and Dowling cases.

■ The difficulty with appellant's claims is that the quoted questions and answers are not all that occurred. As soon as the officer volunteered "I asked him for a statement which he refused to give me," there was a motion by the defendnat, out of the jury's hearing, for a "mistrial"—the only objection made. Immediately the court said, "I will sustain your objection and have the jury disregard it and have it stricken from the record," but the court refused to declare a mistrial. The next step in the trial was the court addressing the jury "Ladies and gentlemen of the jury, the defendant has made an objection about the witness making a statement by the defendant, about the defendant refusing to make a statement. You are instructed to disregard it and it will also be stricken from the record." In passing it may be said that it is not perfectly clear from the record whether the officer's request to Humphrey was for a statement as to the accident he was going back to or whether it referred to the title or possession of the automobile, since the latter question of title came later the inquiry may have related to the accidnet. As to the title to the automobile as soon as there was an objection the court said, "I am going to sustain it." But again counsel insisted on a mistrial. The court directed the jury "The objection of counsel will be sustained and the jury instructed to disregard the last statement of counsel (sic)." It was not until after all these events and the noted testimony that Officer Edwards said he arrested the appellant and "conveyed him to the hospital." The appellant now argues that the fact of the court's instructing the jury to disregard the officer's statements only "aggravated the situation by calling attention to the nature of the objection." But in all the circumstances and as to both incidents it may not be said that the court so abused its discretion that this court should grant a new trial. State v. Starks, Mo., 459 S.W.2d 249; Holt v. State, Mo..

433 S.W.2d 265; State v. James, Mo., 347 S.W.2d 211; State v. Statler, Mo., 331 S.W. 2d 526; State v. Ulrich, Mo., 316 S.W.2d 537 and State v. Tellis, Mo., 310 S.W.2d 862.

■ Laverne Jackson was not endorsed as a witness on the information when it was filed on December 11, 1969, and it is now urged that the court erred in permitting her to testify, particularly because the defendant did not have an opportunity to interview her before she testified. The appellant here relies on State v. Berstein, Mo., 372 S.W.2d 57, a case in which a lately endorsed witness was in jail and at the direction of the state's attorney defendant's counsel was denied permission to interview the witness. There the court applied the principle that one accused of crime should ordinarily be permitted to interview an endorsed witness in custody. Annotation 14 A.L.R.3d 652, 655. But again as with the two previous points, that is not the situation in this case. Laverne was not in custody and no one actually prevented defendant's counsel interviewing her. Here five days before trial defendant's counsel was given notice that Laverne would be endorsed as a state's witness. In the meanwhile, due to other court matters, the lawyer says that he was unable to interview the witness. When she was called in the trial defense counsel objected to her testifying until he had had an opportunity to interview her. In response to the objection the court said, "you have had the opportunity for one week * * * and the Court told you earlier this morning to discuss anything you wished with the witness and you did not avail yourself of that so I am going to overrule it and let's proceed." The fact of an accident and the coat on the car's fender had been testified to by Patrolman Edwards, Laverne supplied the details of the accident and identified the coat. Even now it is not pointed out just how the defendant was unfairly prejudiced, it is only said that he "could not anticipate or prepare for the evidence offered through the witness * * * or

to prepare in advance to meet her testimony or properly cross-examine her," and that thus his constitutional right of confrontation was infringed. Appellant's counsel refused to cross-examine Laverne, but even after the event it is not apparent just how an interview would have aided counsel and it is not now said that any new or different fact could have been elicited even by a thorough, well-informed cross-examination. Possible problems would have been avoided by the courts recessing for a few minutes but the record does not reveal obvious surprise or advantage to the state and in all the circumstances it may not be said that the court so abused its discretion that appellant should now be granted a new trial. State v. Cobb (en banc), 444 S.W.2d 408; State v. Farris, Mo., 243 S.W.2d 983.

■ The appellant's fourth point is that he "submitted an instruction conversing the element of criminal intent" and that the court erred in refusing to instruct the jury "in accord with the request." In arguing the point appellant says that offered Instruction C was intended to be used with the other two, A and B, and in any event that intent is an essential element of the offense charged here "did drive, use and operate a certain motor vehicle * * * without the permission" of Hunter, the owner, and therefore, as a part of the law of the case, the court was bound if it did not give one or more of the offered instructions, to give a correct instruction conversing the element of intent. In the first place, this is not a case in which the defendant claimed that he had bought the automobile or had borrowed it from the owner or that he was driving the vehicle with the permission of someone in lawful possession, and there is no evidence to support any such claim. The defendant offered no evidence, he merely asserted that he was not guilty. Thus even though intent is an essential element the cause is not an instance of the verdict-directing instructions ignoring a supported defense as was the case in State v. Drane, Mo., 416 S.W.2d 105, and State

v. Tate, Mo., 436 S.W.2d 716. In the latter case the court concluded "There was no instruction recognizing the defense of driving, operating and using the automobile with the honest belief that the defendant had permission to do so from a person he in good faith believed to be the owner and in lawful possession of it."

It is not necessary to comment on Instructions A and B, it is sufficient to say that they were unsupported by proof and were otherwise inapplicable to the circumstances. And Instruction C did not in terms converse *intent,* it concluded with a requirement that the jury find beyond a reasonable doubt that the defendant in operating the automobile "acted wilfully and feloniously." The given instructions, particularly Instruction 2, after hypothesizing the offense and the facts as shown by the state's evidence contained the definition and requirement that "wilfully" as used in the instructions "means intentionally and not accidentally." The latter is an approved definition of intent in automobile tampering cases (State v. McLarty, Mo., 414 S.W.2d 315), "it adequately and fairly submitted that issue" and the court did not prejudicially err in refusing to give additional instructions on the subject. State v. Turner, Mo., 452 S.W.2d 185, 186; State v. Kelley, Mo., 442 S.W.2d 539, 540.

■ As indicated at the outset, "Jerry Humphrey" was charged as a second offender. Specifically, it was charged that in 1968 in St. Louis he was charged with burglary and stealing, that he was convicted and sentenced to serve concurrently three years for the burglary and two years for the larceny. It was alleged that the sentences were served and that he was duly discharged from the penitentiary on June 25, 1969 "after and upon lawful compliance with said sentences." It is now objected that the appellant is entitled to a new trial because he was entitled to have the jury fix his punishment. The basis of his claim is that "there were no proper *findings concerning the application of the* second offender statute" and that the pro-

cedures employed by the court in arriving at its finding were in violation of his constitutional privileges. The latter claim has to do with the court's finding of Jerry's identity as the person named in the prior records, including his photographs, as the person on trial and the person who served the prior concurrent sentences. The proof of his prior convictions was by a deputy clerk in St. Louis who testified in detail to the contents of the records. In addition the state offered in evidence the records of the Department of Corrections which contained a detailed description of "Jerry Louis Humphrey." One of the objections is to the difference in names, on this record "Jerry Humphrey" and in the department's records as "Jerry Louis Humphrey." It is not necessary to encumber this opinion with further details of the records, the court "had the right to view the photograph and conclude therefrom that the record did refer to the appellant, whom the court had before it in making its ruling." State v. Trevino, Mo., 428 S.W.2d 552, 554. There could be a mistake as to middle name but the record and finding of identity refute the possibility. State v. Witt, Mo., 371 S.W.2d 215, 220. The appellant and his counsel, understandably, are not aware of the latest decisions on the general subject, but the overall weakness of the argument is that the allegation, proof and finding of the applicability of the second offender act meet the standards recently set by the court en banc in State v. Blackwell, Mo., 459 S.W.2d 268 and State v. Ellifrits, Mo., 459 S.W.2d 293.

For the indicated reasons the judgment is affirmed.

STOCKARD and PRITCHARD, CC., concur.

PER CURIAM:

The foregoing opinion by BARRETT, C., is adopted as the opinion of the court.

All of the Judges concur.