**STATE of Missouri, Respondent,**

v.

**Frank Raedale FOX, Appellant.**

No. 9715.

Missouri Court of Appeals, Springfield District.

March 24, 1975.

John C. Danforth, Atty. Gen., Robert M. Sommers, Asst. Atty. Gen., Jefferson City, for respondent.

Ronald L. Little, Poplar Bluff, for appellant.

Before BILLINGS, C. J., and HOGAN and FLANIGAN, JJ.

BILLINGS, Chief Judge.

A Butler County jury convicted appellant Frank Fox of armed robbery (§ 560.-135 RSMo 1969, V.A.M.S.) and fixed his punishment at five years imprisonment in the Department of Corrections. In this appeal he contends reversible error was committed in his trial (a) by the admission of testimony of a deputy sheriff that he failed to reply to an inquiry by the officer and (b) in the giving of the state's verdict directing instruction. We affirm.

Mrs. Faye Chambers was the manager of A's Fish House in Poplar Bluff, and she resided in Inman Acres which is located east of that city. Her residence is a short distance south of Highway 60 and east of the El Rancho Cafe. The Poplar Bluff Airport is a mile or so farther east on Highway 60.

On the night of May 11, 1973, Mrs. Chambers and her 14-year-old daughter left A's Fish House about 10:30 p. m. in Mrs. Chambers' automobile. Mrs. Chambers had $20.00 in her purse and a red money bag containing the approximate sum of $800.00 in money and checks. The contents of the money bag represented receipts from A's Fish House which was owned by A. D. Luster. When Mrs. Chambers drove her car into her driveway about 11:00 p. m. she saw a man standing next to the driveway. She stopped the car, and as her daughter got out of the vehicle the man, subsequently identified as the defendant, got into the car and pointed a derringer pistol at Mrs. Chambers. He ordered her out of the vehicle and told her to leave her purse and "go out back and run across the field."

The defendant appeared at the El Rancho Cafe between 11:15 p. m. and 11:30 p. m. desiring to use the telephone to call a taxicab. After 20 minutes the defendant paid a man at the cafe to drive him to the Palace Lounge in Poplar Bluff.

Deputy Sheriff Kimbrow obtained a description of the bandit from Mrs. Chambers shortly after the robbery. In his investigation the officer went to the El Rancho Cafe and was there advised of the defendant's arrival at that establishment and his having been transported to the Palace Lounge. Deputy Kimbrow arrested the defendant at the Palace Lounge a few minutes after midnight and advised him of his Miranda rights which defendant said he understood. The defendant's trousers and shoes were wet and muddy.

Initially, the defendant made no statements to the deputy sheriff, but en route to the scene of the robbery the defendant "made a lot of statements." Among other things the defendant told the officer that he had been at the El Rancho Cafe earlier and that he had come to that establishment from the airport to use the telephone. The officer then asked the defendant "[W]hy he didn't use the one at the airport or at the Deer Run Cafe where there is an outside pay phone. *He didn't answer.*" The italicized portion of the officer's testimony is attacked by the defendant as an improper comment on his exercise of his right to remain silent, which should have resulted in his request for a mistrial in being granted by the lower court.

The defendant has cited cases which recognize and follow the settled law of this state that a defendant's silence when charges are judicially made against him or he is under arrest cannot be shown against him. State v. Elmore, 467 S.W.2d 915 (Mo.1971); State v. Stuart, 456 S.W.2d 19 (Mo. banc 1970); Helton v. United States, 221 F.2d 338 (5th Cir. 1955). In support of his point the defendant strenuously contends that since he was in custody of the officer he was under no duty to speak and that the officer's testimony "He didn't answer" would give rise to inferences that he had no explanation to the officer's inquiry; that defendant's explanation as to why he was at the El Rancho Cafe was not true; and that since he had lied he had something to hide and must be guilty.

We have carefully examined the record concerning defendant's point and have con-

cluded the trial court did not err in denying his motion for a mistrial. When the defendant was arrested by the officer at the Palace Lounge the warnings required by Miranda were read to the defendant and he stated he understood them. Without objection, the officer was asked: "Q. Did the defendant, Frank Fox, make any statements to you after you arrested him?" The officer testified: "A: Not at that time."

En route to the Chambers residence the defendant did not exercise his right to remain silent, but on the contrary "made a lot of statements." The defendant volunteered the reason why he appeared at the El Rancho Cafe, and the officer's inquiry was not an accusatory question about a crime as would require the invocation of the privilege to remain silent in the face of an accusation. This is not the situation where the defendant stood mute in the face of an accusation because the record does not show an accusation that the defendant committed the armed robbery. Further, as we have noted, the defendant did not stand mute for he was not silent and freely volunteered information concerning his whereabouts earlier in the night, why he was at the Palace Lounge, and where he was going. The transcript does not reveal any effort on the part of the arresting officer to confront the defendant with any accusation of guilt or with any incriminating evidence.

■ Without considering whether the defendant's failure to object to the earlier testimony of the officer that the defendant did not make any statements immediately following his arrest was a waiver of objections to the testimony that followed, we are of the opinion that this is not a case where an accused remains silent in the face of a charge of guilt made under circumstances calling imperatively for an admission or denial and testimony as to the defendant's silence would be improper. No inference of guilt of the crime of armed robbery flows from the deputy's volun-

teered comment that the defendant did not answer his inquiry concerning the use of a particular telephone. In rejecting a similar contention the court in State v. Starks, 459 S.W.2d 249, 252 (Mo.1970), said:

"Miranda lays down the mandate that at the trial the prosecution may not use the fact that the defendant 'stood mute' or claimed his privilege to remain silent *in the face of accusation*. As stated in State v. Battles, supra, [357 Mo. 1223, 212 S.W.2d 753, 757 (1948)], 'All of the cases where we have held that it was error to prove that the arrested person remained silent were cases where the persons were asked about the alleged crime or where some one made a statement about the alleged crime in the presence of the accused.' (The same holds true in all of the cases subsequent to Battles.) In Battles the appellant was not asked about the crime nor was anything said about the crime in his presence by anyone, as a result of which the admission in evidence of this question and answer was upheld: 'Q. Did the defendant make any statement there about anything? A. No, sir.'"

■ We also observe that following the defendant's general objection to the italicized portion of the officer's testimony the only relief sought was that of a mistrial. The declaration of a mistrial is a drastic remedy which should only be exercised when the prejudice is so great that it cannot be removed by other means. State v. Duncan, 499 S.W.2d 476 (Mo.1973). Consequently, trial judges are and should be vested with considerable latitude on such matters.

The defendant has assigned four errors in the state's verdict directing instruction and argues that each resulted in prejudicial error. For the reasons which follow we conclude otherwise and rule the instruction was substantially correct and did not prejudice the defendant.

■ Defendant's first claim of error is that the instruction, No. 5, was prefaced by

the phrase "you are further instructed that" and MAI–CR 7.62 does not contain such prefatory language. The defendant suggests this served to highlight and call undue attention to this instruction at the expense of the other instructions. However, he fails to demonstrate how and in what manner the inclusion of the phrase gave undue emphasis to No. 5 or cast the other instructions in a lesser light.

■ The second charge of error is that in addition to requiring a finding that Mrs. Chambers had possession of $159.70, the instruction required the jury to find the money was owned by A. D. Luster. The latter finding, the defendant contends, is not required by MAI–CR 7.62 and thus constitutes a prejudicial deviation. Although ownership of the money was not required to be submitted [MAI–CR Comments, Robbery IIE] since the jury was required to find it was in the possession of Mrs. Chambers, the assumption of this additional burden by the state would not tend to "confuse of mislead" the jury and did not prejudice the defendant. The information alleged ownership of the monies by A. D. Luster, and he so testified. The additional finding required by the instruction served to doubly negate any right of possession or ownership by the defendant.

■ The third attack on No. 5 is that it required the jury to find the defendant used a "dangerous and deadly weapon," rather than a "deadly and dangerous weapon" as in MAI–CR 7.62, which was effective when the case was tried, and the transposition of terms was an unauthorized deviation and prejudice is presumed. Rule 20.02(e), V.A.M.R.

The statute [§ 560.135] under which the defendant was charged describes the weapon as being a "dangerous and deadly" one whereas original MAI–CR 7.62 requires a finding that the robbery was committed by a "deadly and dangerous" weapon. By a recent order MAI–CR 7.62 was revised by the Supreme Court effective March 1, 1975, so as to conform to the statutory language, i. e., "dangerous and deadly weapon."[1]

We find no merit in the defendant's complaint because under either version of MAI–CR 7.62 the jury was required to find the weapon used met the statutory tests of being both dangerous *and* deadly.[2]

The defendant's final charge against No. 5 is that the required finding that Mrs. Chambers was in possession of $159.70 and such sum was taken from her was not supported by the evidence and was confusing and misleading.

■ In a robbery prosecution, it is necessary to describe the property taken, although the description need not be in accurate detail because the kind and value of the property are immaterial. The essence of the crime is a taking by putting in fear. Proof of the exact value of the property taken is not required. The amount is immaterial if it had some value. State v. Shephard, 494 S.W.2d 53 (Mo.1973); State v. Johnson, 457 S.W.2d 762 (Mo. 1972); MAI–CR Comments, Robbery IID. The evidence was sufficient to support the instruction and no error appears.

The information is sufficient in form and substance. The verdict of the jury was responsive to the evidence and in proper form. Allocution was granted prior to judgment and sentence.

The judgment is affirmed.

1. The initial order revising the terminology of MAI–CR 7.62 resulted in both "deadly and dangerous" and "dangerous and deadly" being in the instruction.

2. "Strange! that such high dispute should be 'Twixt Tweedledum and Tweedledee."
John Byrom (1692–1763) *On The Feuds Between Handel and Bononcini*; Bartlett, Familiar Quotations, 14th Ed. (1968).